**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SHARAM SHAKOURI,** | § | |
| **TDCJ # 1558021,** | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | |
| | § | |
| **LORI DAVIS, ET Al.,** | § | |
| **Defendants.** | § | |

---

### DEFENDANT WHITFIELD'S NOTICE OF REMOVAL

---

# EXHIBIT B

## Pleadings asserting Causes of Action, Plaintiff's Complaint

CASE NO. 1627998

**SHAHRAM SHAKOURI,**

**Plaintiff,**

**vs.**

**LORI DAVIS, ET AL.,**

**Defendants,**

---

**ORIGINAL COMPLAINT**

---

Shahram Shakouri

TDCJ-ID #1558021

Stringfellow Unit

1200 FM 655

Rosharon, Texas 77583

FILED

TIME 10

21 DAY OF SEPT 20 16

ROBYN FLOWERS

District Clerk, Walker County

By _____ Deputy

## TABLE OF CONTENTS

|  | Page(s) |
|---|---|
| **COMPLAINT** .......................................................................................................... | **1-28** |
| **JURISDICTION AND VENUE** ................................................................................ | **5** |
| **EXHAUSTION REQUIREMENT** ............................................................................ | **5** |
| **CLAIM NO. 1**  Violation of the Plaintiff's Constitutional Rights to Free Exercise of Religion.. | **6-10** |
| **RELEVANT FACTS** .............................................................................................. | **7-10** |
| **CLAIM NO. 2**  Harassment and Retaliation ......................................................... | **10-12** |
| **ARGUMENTS AND AJTHORITIES** ...................................................................... | **12-17** |
| **PLAINTIFF'S CLAIM OF FREEDOM OF RELIGION MERITS CONSTITUTIONAL PROTECTION** |  |
| **NOT PUNISHMENT** ............................................................................................ | **17-19** |
| **THE 13TH AMENDMENT TO THE UNITED STATES CONSTITUTION and TEXAS GOV'T** |  |
| **CODE,  SECTION  497.099** ................................................................................ | **19-23** |
| **OBJECTION TO DEFENDANT'S READING ON PUNISHMENT** ............................... | **23-24** |
| **CONCLUSION** ...................................................................................................... | **24-26** |
| **RELIEF SOUGHT** ................................................................................................ | **26-27** |
| **VERIFICATION** .................................................................................................... | **28** |

i

**EXHIBITS**

EXHIBIT "A"  WHO ARE THE BAHA'IS?

EXHIBIT "B"  TWO-STEP GREIVANCE   2112

EXHIBIT "C"  TWO-STEP GREIVANCE   1938

EXHIBIT "D"  TWO-STEP GREIVANCE  2804

EXHIBIT "E"   TWO-STEP GREIVANCE   2783

EXHIBIT "F"   TWO-STEP GREIVANCE   2794

EXHIBIT "G"   THE UPS STORE RECEIPT

EXHIBIT "H"  TWO-STEP GREIVANCE   6782

EXHIBIT "I"    TWO-STEP GREIVANCE   8082

EXHIBIT "J"   TWO-STEP GREIVANCE   1613

EXHIBIT "K"   AFFIDAVIT OF JOHN D. DARLAND

EXHIBIT "L"   COPY OF THE MOST HOLY BOOK,  PAGE 46

EXHIBIT "M"  COPY OF BAHA'U'LLAH AND THE NEW ERA, PAGE 159

**PARTIES TO THE SUIT**

**PLAINTIFF:**       Shahram Shakouri

                        TDCJ-ID #1558021

                        Stevenson Unit

                        1525 FM 766

                        Cuero, Texas  77954

**DEFENDANT #1:**    Lori Davis, Director of TDCJ-ID

                        861B IH 45 North

                        Huntsville, Texas  77320

**DEFENDANT #2:**    Kelli Ward, TDCJ Administrator, Manager I

                        1060 Highway 190 East

                        Huntsville, Texas  77340

**DEFENDANT #3**     Melodee Blalock, TDCJ Programs Supervisor I

                        1060 Highway 190 East

                        Huntsville, Texas  77340

**DEFENDANT #4**     Bobbie Turner-Parker, TDCJ Resolution Support

1060 Highway 190 East

Huntsville, Texas  77340


**DEFENDANT #5** Glen H. Whitfield, Senior Warden

James A. Lynaugh Unit

1098 South Highway 2037

Fort Stockton, Texas 79735


**DEFENDANT #6** Ralph Marez, Jr., Assistant Warden

James A. Lynaugh Unit

1098 South Highway 2037

Fort Stockton, Texas 79735


**DEFENDANT #7** Adela Armendariz, Sergeant

James A. Lynaugh Unit

1098 South Highway 2037

Fort Stockton, Texas 79735


**DEFENDANT #8** Jesus A. Garcia-Chavez, Food Service Manager II

James A. Lynaugh Unit

1098 South Highway 2037

Fort Stockton, Texas 79735

**DEFENDANT #9**        Russell H. Thompson, Jr.,  CO IV

James A. Lynaugh Unit

1098 South Highway 2037

Fort Stockton, Texas 79735


**DEFENDANT #10**       Jashua Caballero, CO III

James A. Lynaugh Unit

1098 South Highway 2037

Fort Stockton, Texas 79735


**DEFENDANT #11**       Rose M. Jurado,  CO IV

James A. Lynaugh Unit

1098 South Highway 2037

Fort Stockton, Texas 79735

v

CASE NO. 1627998

| | | |
|---|---|---|
| SHAHRAM SHAKOURI, | § | IN THE DISTRICT COURT |
| TDCJ-ID #1558021, | § | |
| Plaintiff, | § | |
| Vs. | § | OF WALKER COUNTY, TEXAS |
| | § | |
| LORI DAVIS, Director, TDCJ-ID; | § | |
| KELLI WARD, TDCJ Administrator, | § | 12th JUDICIAL DISTRICT |
| Manager I; MELODEE BLALOCK, | § | |
| Supervisor I;  BOBBIE TURNER-PARKER, | § | |
| Resolution Support; GLEN H. WHITFIELD, | § | |
| Lynaugh Unit Senior Warden; RALPH | § | PLAINTIFF PRESENTS HIS |
| MAREZ, Jr., Lynaugh Unit Asst. Warden; | § | JURY DEMAND HERE |
| ADELA ARMENDARIZ, Sgt.; JESUS A. | § | |
| GARCIA-CHAVEZ, Food Service Mgr. II; | § | |
| RUSSELL H. THOMPSON, Jr, CO IV; | § | |
| JASHUA CABALLERO, CO III; ROSE M. | § | |
| JURADO, CO IV, | § | |
| Defendants. | § | |

FILED
TIME 10
21 DAY OF Sept 20 16
ROBYN FLOWERS
District Clerk Walker County
By _____ Deputy

## COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Shahram Shakouri, TDCJ-ID #1558021, Plaintiff, pro se, in the above styled
and numbered cause of action, presenting this Complaint to redress the violation of his
constitutional rights in accordance with the protections of both state and federal constitutional

provisions protecting his right to freedom of religion and freedom of expression, and in support of said Complaint would respectfully show the Honorable Court the following:

I.

Plaintiff, Shahram Shakouri, hereinafter styled, "Plaintiff," a state prisoner and member of the Baha'i Faith[1] and currently incarcerated at the Stringfellow Unit of the Texas Department of Criminal Justice, Institutional Division, alleges that the Defendants names in this lawsuit have violated his constitutional rights, while acting under the color of law, to include, but not limited to, his free exercise of religion, guaranteed him by the provisions of Article 1, Section 6 of the Texas Constitution,  the First Amendment to the Constitution for the United States of America, the Texas Religious Freedom Restoration Act (TRFRA), and the Religious Land Use and Institutionalized Persons Act (RLUIPA).

Plaintiff has been a Baha'i all of his natural life.  In fact, he is a fourth-generation Baha'i. He declared that he was a member of the Baha'i Faith upon his arrival to the Texas Department of Criminal Justice, Institutional Division in 2009.  Since his arrival, Plaintiff, has maintained a sincere belief in his religion.  He has requested time and a place for his devotional meetings (services) and recognition of his religious fasts and holy days.

When the prison officials[2] demanded that he should work without pay, Plaintiff politely declined, citing his religious beliefs and constitutional standing to not be compelled to work without pay, as this is a direct violation of his religious dogma.  Plaintiff informed the officials that work without pay constitutes industrial slavery in the Baha'i Faith and "slavery" and "industrial slavery" are condemned in his religion.  Plaintiff even provided the officials with a copy of the Baha'i Holy Scriptures in which such industrial slavery is explicitly condemned.

---

[1]    The Baha'i Faith is a worldwide religion started in Persia in 1844.  Its 7.5 Million followers are called Baha'is, meaning "those who follow the light."  Baha'is see their Divinely Ordained Religion as the greatest of all means for establishing order and peace in the world.  Its Ultimate Purpose, according to its prophet founder, Baha'u'llah, is "to safeguard the interests and promote the unity of the human race, and to foster the spirit of love and fellowship amongst men."  See Plaintiff's Exhibit "A" for more information.

The prison officials, however, reacted by orchestrating a systematic and deliberate campaign of harassment and retaliation. The unconstitutional conduct of the prison officials/Defendants cited herein, was in the form of verbal abuse, profane and abusive language, late-night raids on Plaintiff's cell, destruction of Plaintiff personal property, unlawful seizure and destruction of Plaintiff's legal documents, numerous disciplinary cases with the intent to punish Plaintiff for exercising his constitutionally protected religious beliefs and the imposition of various restrictions and deprivation of privileges. They even once asked known prison gang members to assault and stab the Plaintiff for his refusal to take part in TDCJ-ID's work program(s).

Plaintiff further asserts that this retaliatory adverse actions of the Defendants has risen to a level of constitutional deprivation and religious persecution. As Plaintiff has been subjected to over 500 days of commissary, phone, and recreation restrictions; over 150 days of cell restriction; and 30 days of solitary confinement. The Defendants further punished Plaintiff by taking 770 days of good conduct time from him and 110 days of work time credits.

Without any administration of due process of law nor adequate procedures to safeguard Plaintiff's constitutional rights concerning his religious practices and beliefs, as a result, Plaintiff now has a liberty interest claim because of his parole date being pushed 890 days into the future.

The Defendants unlawfully subjected Plaintiff to all of these cruelties because he chose to practice his religion in all sincerity and belief. Industrial slavery is condemned and prohibited by Plaintiff's religion as it is contrary to the Law of God. In other words, the Defendants denied Plaintiff his fundamental right to freedom of religion which the Texas Constitution has clearly affirmed, TRFRA has unmistakenly declared, and the United States Constitution has adamantly assured every citizen of the United States of America.

Instead of upholding the said constitutions, honoring Plaintiff's religious rights, and affording him a religious exemption under TRFRA, the Defendants downgraded his custody status to the lowest level possible, G4 Line 3, and transferred Plaintiff to the inferior and violent environment of Medium Custody at the Lynaugh Unit.

While assigned to Medium Custody status, Plaintiff did not have a job, rather he was assigned to the Medical Squad. A position designed for offenders who are medically unable to work. For those 16 months that Plaintiff was assigned to the Medical Squad he was not asked to perform any slavery duty; the prison did not shut down because Plaintiff did not work; and the world did not come to an end because Plaintiff did not work without pay. This is an un-deniable proof that prison officials decided to punish Plaintiff for refusing to participate in TDCJ-ID's "work program." Such action was arbitrary and not related to any legitimate governmental interest.

---

[2]   The prison officials named in this suit as Defendants deliberately transferred Plaintiff from the James A. Lynaugh Unit of TDCJ-ID to an inferior prison named the Stringfellow Unit, in retaliation for him having filed grievances at the end of January 2016.

In September of 2014, after 16 months of confinement in a gang-infested environment of Medium Custody, Plaintiff was transferred back to general population, with a new "work" assignment. He again refused to engage in industrial slavery, as not to violate the tenets of his religious beliefs and engage in TDCJ-ID's slavery program.

In response, prison officials served him with three new major disciplinary cases . The Disciplinary Hearing Officer, Captain Kempt, punished the Plaintiff by demoting his Line Class status to Line 3, the lowest possible demotion. She, however, reassigned him to Medical Squad, upon consulting with Assistant Warden Bowers, and receiving a copy of the Baha'i Holy Scriptures prohibiting industrial slavery.

Reassigning the Plaintiff back to the Medical Squad in and of itself was an unmistakable confirmation that punishing the Plaintiff for his sincere religious beliefs was discretionary and not related to any compelling government interest.

The Defendants herein resumed their persecution of Plaintiff all over again in 2015. After Captain Kempt and Assistant Warden Bowers departed from the James A. Lynaugh Unit. The prison officials, including the Defendants, Whitfield and Marez, assigned the Plaintiff to kitchen duties and punished him with six more disciplinary cases for adhering to the precepts of his faith and refusing to participate in a work program, which clearly violated his religious beliefs.

In this latest round of persecution, Plaintiff was punished with 190 days of various restrictions, including cell restriction and 30 days of solitary confinement. Plaintiff lost more good conduct time credits, and his parole date was once again extended further into the future. Plaintiff's custody level was reduced even further and he was transferred back to the inferior section of the prison called Medium Custody.

In an aberrant move, however, the Defendants reassigned Plaintiff back to Medical Squad, meaning that he did not have to have a "job" and he did not have to participate in TDCJ's "work program," in violation of the Plaintiff's religious beliefs. So, if the normal operation of the prison is not interrupted, and its security is not disturbed whenever Plaintiff is assigned to the Medical Squad, and he is not obligated to perform any slavery duty, then, why did the Defendants not uphold the law and grant him a religious exemption under TRFRA to begin with? And why have they subjected Plaintiff to all these unnecessary and retaliatory punishments?

The answer to these questions is plainly simple. TDCJ-ID does not implement policies that benefit the inmates/offenders or allows religious practices on their own accord because it is the right thing to do. TDCJ-ID has to be compelled by court order to do what is constitutionally right. In the past decades, TDCJ-ID would not allow the Muslim prisoners to have a Qur'an or to practice their religion freely. Until the Muslim inmates filed numerous lawsuits in the 1970s and 1980s and the federal courts intervened.

In fact, back in 2011, when Plaintiff asked for equal treatment, similar to what has been afforded the Muslim community, on his Unit, the Unit's chaplain, Gary Raines, stated that, "the Muslims have filed and have won many lawsuits." Suggesting that the prison officials will not honor the Baha'is constitutional rights to freedom of religion until and unless the Baha'is file lawsuits in the state and federal courts.

Plaintiff's cognizable complaint is therefore properly before this Honorable Court.

## II.

## JURISDICTION AND VENUE

**Jurisdiction** is conferred upon this Honorable Court by Section 15.002 of Texas Civil Practice and Remedies Code which authorizes this Court to hear and to decide cases concerning controversy related to the Texas Constitution and Texas statutes.

Plaintiff is seeking redress for violation of his constitutional rights under Texas Constitution, Article I, Sections 3, 6, 13, and 19, as well as violations of his 1st, 6th, 8th, and 14th Amendment rights incorporated in the Constitution for the United States of America which protect his right to exercise, as well as establish his religion and to be immune from retaliation for the practice and exercise of the same, as well as to be free from harassment for practicing his religion and to be guaranteed the same equal protection of the laws afforded every citizen of the United States of America.

**Venue** is proper in this Court because the Defendants are Texas residents as well as officials or contracted employees of the STATE OF TEXAS, acting in their official capacity and under the color of state law and authority. The business these Defendants conduct is carried out in the State of Texas with their headquarters in Huntsville, Texas. The alleged injuries to the Plaintiff occurred at the hands of TDCJ-ID employees, contractors, and their supervisors, working in various counties throughout Texas.

## III.

## EXHAUSTION REQUIREMENT

Plaintiff in this case has utilized the grievance system at the James A. Lynaugh Unit and has complied with all the procedural requirements and deadlines. Plaintiff has filed at least a dozen two-step grievances in 2015, providing ample opportunity to the Defendants and other prison officials to comply with the Constitution, as well as State and Federal laws and to refrain from violating Plaintiff's constitutional rights. Plaintiff has certainly made a diligent effort to carry out his responsibility to timely exercise the available administrative remedies as required by the Prison Litigation Reform Act, and the United States Supreme Court in **Jones v. Bock**, 549 U.S. 199, 203 (2007) and **Gonzalez v. Seal**, 702 F.3d 785, 788 (5th Cir. 2012).

Plaintiff will demonstrate in the following pages that Plaintiff diligently attempted to resolve the issues of retaliation; discrimination; harassment; and violation of his constitutional rights through the use of the prison's grievance procedures, but that he was hindered by deliberate indifference of the Defendants cited in this lawsuit and their supervisors at the regional level.

The contents of the Plaintiff's grievances will illustrate that he made it very clear to these Defendants that they were violating his constitutional rights, because… (1) the speech or conduct at issue is protected; (2) the Defendants took adverse action against the Plaintiff; and (3) there was a causal connection between the protected speech and/or conduct and the adverse action. **Gill v. Pidlypchax**, 359 F.2d 379 (2d Cir. 2004).

Plaintiff will present to this Honorable Court direct evidence of motivation and will evince a chronology of events which show a clear violation of his constitutional rights along with retaliatory actions of the Defendants.   Given the nature of the deprivation, discrimination, retaliation, and the number of Defendants involved directly in such conduct.  Plaintiff prays this Honorable Court will call on them to give an answer for the reasons they behaved as such against the Plaintiff.

It is the Plaintiff's desire to be free of such unconstitutional conduct on the part of the Defendants.  However, Plaintiff is aware that without the Honorable Court's power and authority, such conduct is going to continue and it will not cease until this Court acts on Plaintiff's behalf.

**CLAIM NO. 1**     Violation of the Plaintiff's Constitutional Rights to Free Exercise of Religion.

Plaintiff alleges that he has been compelled to participate in work without pay which according to the tenets of his religion constitutes "industrial slavery."   Plaintiff further alleges that he was punished for adhering to the laws and precepts of his religion after he refused to participate in "industrial slavery."  Plaintiff brought to the attention of the Defendants that the Jewish Prisoners are not compelled to work on Saturday (their Sabbath), and they are not punished for refusing to work on their Sabbath (Saturdays).  Moreover, the Muslim Prisoners are not forced to consume pork, and they are not punished for adhering to the laws of their religion and for refusing to eat or even handle pork.

Plaintiff reminded the Defendants that Article I, Section  6 of the Texas Constitution and the First Amendment to the Constitution for the United States of America provide protections which have been extended to the Jewish Prisoners where they are exempt from working on the

Sabbath (Saturdays). Both Constitutions further protect the Muslim Prisoners where they are allowed to attend their Friday prayers and to observe their fasts. The Muslim Prisoners are further exempt from working for 30 days during their religious fast known as Ramadan.

The Defendants, however, refuse to extend the protection of Article I, Sections 3, 6, 13, and 19 of the Texas Constitution to the Plaintiff and they denied him the protection of the 1st, 6th, 8th, 13th, and 14th Amendments to the United States Constitution.

By refusing to offer the equal protection of the laws to the Plaintiff and his co-believers, the Defendants ignored the United States Supreme Court decision in **Cruz v. Beto**, 405 U.S. 319, 322, 92 S.Ct. 1979, 1081-82, where the Court held: "a prisoner must be accorded a comparable opportunity offered fellow prisoners who adhere to conventional religious precepts."

By "comparable opportunity" it is meant that the Plaintiff and his co-believers, the Baha'is, have the same constitutional and human rights as the Jews, Christians, Muslims, and others of different religious sects. As Jewish prisoners have the right not to be compelled to work on Saturdays (their Sabbath Day), the Plaintiff has a right to not be compelled to participate in "industrial slavery." As the Muslim prisoner is exempt from consuming pork and are excused from working for a period of 30 days during their fast known as Ramadan, the Baha'is should be exempt from working without pay.

The Jews must suspend work on the Sabbath, according to the Law of God in the Torah, the Muslim must obstain from consuming pork according to the Law of God in the Qur'an, and the Baha'is may not participate in any form of slavery according to the Law of God in the Kitab-i-Aqdas, The Most Holy Book of the Baha'i Faith.

**Relevant Facts:** Violation of constitutional rights regarding freedom of religion and retaliatory adverse actions against Plaintiff by the Defendants for Plaintiff having exercised his First Amendment rights to freedom of religion went well beyond any legitimate penological interest of the prison.

The actionable violation of Plaintiff's constitutional rights regarding "free exercise" of religion was affirmed when the prison officials rejected his cognizable claim to equal protection of the laws and unlawful punishment exacted against him for his sincere belief that industrial slavery is contrary to the Law of God in his religion.

Plaintiff's constitutional violations were caused when he was forced to endure humiliation, retaliation, loss of privileges, and loss of good conduct time credits , among other deprivations. For instance, in the two-step grievance number 2112, the Defendants, Garcia-Chavez, Asst. Warden Marez, and M. Blalock, conspired to punish the Plaintiff for refusing to take part in industrial slavery.  They further refused to grant Plaintiff his religious exemption under TRFRA. An exemption which he is legally entitled to.  See Plaintiff's Exhibit "B."

In two-step grievance 1938, Defendants Garcia-Chavez, Glen Whitfield, and K. Ward further punished the Plaintiff for adhering to the laws and precepts of his religion.  The said Defendants once again refused to extend the protections of the TRFRA to exempt Plaintiff from participation in forced labor and involuntary servitude.  See Plaintiff's Exhibit "C."

"Prison officials may not retaliate against or harass an inmate for his exercise of his religious rights."  **Fogle v. Peirson**, 435 F.3d 1252 (10th Cir 2006).

Plaintiff's grievances were sufficiently clear that the Defendants were in violation of his constitutionally protected rights.  The Defendants, however, deliberately overlooked the opportunity to address the problem and avoid this lawsuit.

In **Johnson v. Johnson**, 385 F.3d 503, 517 (5th Cir. 2004), the Court held:  "A grievance should be considered sufficient to the extent that the grievance gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit."

In the last five years, Plaintiff has filed over 50 two-step grievances and has provided the Defendants an ample opportunity to address the problem of violation of his constitutional rights to no avail.

In two-step grievance 2804, for instance, the Plaintiff made it very clear to the prison officials that the major disciplinary case against him was written in violation of his constitutional rights to freedom of religion; the Defendants intentionally ignored Plaintiff's clearly established constitutional rights; that the prison officials are trying to define his religion; to decide which precepts of his faith he can practice and which he cannot practice.

Plaintiff even brought to the attention of the Defendants that in Hyde v. TDCJ, 948 F.Supp. 625 (S.D. Tex 1996), the Court held:  "The Constitution of the United States and of Texas render

all government officers, wardens, senators, judges – wholly incapable of defining a religion or its adherents."

Nevertheless, Defendant Davis, her subordinates, Thompson and Marez, once again violated Plaintiff's constitutional rights and punished him for practicing his religion. Defendant Bobbie Turner-Parker unlawfully rejected Plaintiff's Step-Two Grievance. Wherefore, depriving Plaintiff of exercise of his fundamental rights of freedom of religion. See Plaintiff's Exhibit "D."

Plaintiff has an undisputed statutory right under TRFRA to refuse to take part in an activity/program that violates his fundamental right to free exercise of religion. However, Defendants Marez, and K. Ward ignored Plaintiff's constitutional and statutory rights to freedom of worship and further punished him with yet another major disciplinary case.

In response to disciplinary case 9456, Plaintiff filed two-step grievance 2783, in which he alleged that the imposed punishment for exercising his religion and refusing to participate in the slavery program was illegal, according to the rulings of the United States Supreme Court, the federal circuit courts, and the state courts.

In **McGory v. Pallito**, 687 F.3d 505 (2d Cir. 2012), the Court ruled in favor of the prisoner because "the prison officials threatened to send him to the 'hole' if he refused to work." In the case at bar, the oppressive prison officials have issued five (5) disciplinary cases against the Plaintiff, imposed over 180 days of various restrictions, demoted Plaintiff's custody status to G4 Line 3, and sent him to the 'hole' (solitary confinement) for 30 days. All because of his sincere religious belief that industrial slavery is contrary to the Law of God in his religion.

The illegal acts of the prison officials is in contrast to the United States Supreme Court ruling in 109 U.S. 20 (1883), where the Court went on to say: "Slavery or involuntary servitude shall not exist in any part of the United States. It is well-settled that the term 'involuntary servitude' is not limited to chattel slavery-like conditions. The 13th Amendment was intended to prohibit all forms of involuntary labor."

Plaintiff needs to reiterate that the disciplinary hearings were conducted in his absence in violation of TDCJ-ID disciplinary rules and procedures. He was not afforded a hearing, assistance of a counsel substitute, and he was not allowed to present evidence or call

witnesses.  No cross-examination of his accuser(s) was permitted and he was found guilty in TDCJ-ID's 'kangaroo court' in absentia.  See Plaintiff's Exhibit "E."

The Defendants demonstrated their bad faith and retaliatory intent when they issued their fourth major disciplinary case to further persecute the Plaintiff.

In their latest disciplinary case 1666, the Defendants erroneously claim that Plaintiff "refused to turn out for his work assignment without a legitimate reason."  There is, however, two issues with the Defendants false assumption: (1) The forced labor which TDCJ-ID calls a "work program" is involuntary servitude and industrial slavery, according to the tenets of the Baha'i Faith; and (2) there can be no more legitimate reason for the Plaintiff to refuse to participate in TDCJ-ID's slavery program than his undisputed constitutional right to "free exercise" of religion.  Thus, Plaintiff's "refusal to act was unequivocally lawful as it was in line with the provisions of the TRFRA and defended by the Texas and United States Constitutions. See Plaintiff's two-step grievance 2794, Exhibit "F."


**CLAIM NO. 2**   Harassment and Retaliation


The Defendants were not satisfied with merely issuing frivolous disciplinary cases, imposing various types of restrictions, demotions in custody status, taking 770 days of good conduct time credits, and placing the Plaintiff in solitary confinement and more, rather, they orchestrated a methodical campaign of harassment and retaliation, with the intention of "causing a chilling effect,"  and to compel the Plaintiff to surrender his fundamental right to freedom of religion, to comply with their unlawful demands, to accept the yoke of slavery, and to agree that his religion is inferior to those of Christians, Jews, and Muslims, and therefore, not worthy of the same constitutional protections.

Their outlandish remarks such as "we do not care what your religion says," or "we do not care what your religious beliefs are" by the Defendants, R. Jurado; J. Caballero; and Sgt. Armendariz, along with their raids on Plaintiff's cell and intentional destruction of his personal property in the middle of the night is indisputable evidence of their unconstitutional and malicious conduct.

The contents of Plaintiff's two-step grievance 6752, 8052, and 1613, demonstrate that the Defendants' "adverse action" objectively was retaliatory conduct, "that would deter a similarly situated individual of ordinary firmness from exercising... constitutional rights," and such conduct is illegal and unlawful. **Davis v. Goord**, 320 F.3d 346, 353 (2d Cir. 2003).

**Two-step Grievance 6782**: As it is evident from the contents of two-step grievance 6782, Defendant Caballero used foul language, raided Plaintiff's cell, carried out and destroyed Plaintiff's legal documents[3], threw his water bottle at the Plaintiff, and with the help of his co-workers, trashed Plaintiff's cell and destroyed his commissary items.

The prison officials, however, did not address the unlawful conduct of Defendant Caballero in their response to the two-step grievance. They conveniently ignored retaliatory intent of their officers for issuing a frivolous disciplinary case against the Plaintiff for exercising his constitutional rights. See Plaintiff's Exhibit "H."

**Two-step Grievance 8082**: Direct evidence of violation of Plaintiff's constitutionally protected rights can further be found in two-step grievance 8082. Defendant Davis' subordinate Rose M. Jurado, raided Plaintiff's cell at 1:00 a.m.. She rummaged through Plaintiff's personal property, dumped all his religious books, legal documents, and commissary items on the floor.

Defendant Jurado's adverse conduct was the direct result of Plaintiff's refusal to forfeit his religious right not be compelled to participate in an assignment which violates his constitutional right to freedom of religion.

The motivation for retaliation against Plaintiff has clearly been established; that a specific constitutional right was infringed upon; that the prison officials intent to retaliate against the prisoner for exercising his constitutional rights; that the prison officials engaged in an adverse act (in the form of disciplinary cases); and such disciplinary cases resulted in prisoner suffering punishment for practicing his religion. Morri v. Powell, 449 F.3d 682, 684 (5th Cir. 2006). See Plaintiff's Exhibit "I."

---

[3]   Defendant Caballero confiscated and later destroyed Plaintiff's trial transcripts. In order to comply with the federal judge's order to submit a show cause in a timely manner, Plaintiff had to order a reprint of his trial transcripts which cost him $339.20. See Plaintiff's Exhibit "G."

**Two-step Grievance 1613**: The extent of Defendants' retaliatory conduct and violation of Plaintiff's fundamental rights to freedom of worship can be seen in two-step grievance 1613. See Plaintiff's Exhibit "J."

Defendant Sgt. Armendariz arrested Plaintiff without any probable cause when Plaintiff was on his way to his weekly religious service. She then locked the Plaintiff in a 3' x 3' shower stall in Ad Seg, ordered him to strip down naked in the presence of female officers in violation of TDCJ-ID policy and federal law, left the Plaintiff in that condition for hours with no place to sit or obtain a drink of water, nor any ability to use the bathroom. While Plaintiff was in the Ad Seg. shower stall Defendant Armendariz ordered four of her officers to ransack Plaintiff's cell. Defendant Armendariz's unlawful retaliatory actions resulted in destruction of Plaintiff's personal property, violating his First Amendment right to free exercise of his religion and his Eighth Amendment right not to be subjected to cruel and unusual punishment. When the Unit's Operations Officer, Lieutenant Dominguez, realized that Plaintiff did not violate any rule or policy he released the Plaintiff.

Upon returning to his cell, Plaintiff discovered that his cell had been ransacked, his personal property destroyed, and the floor was littered with his property to include stuffing from his mattress, his legal documents, and his religious books.

In answer to Plaintiff's two-step grievance 1613, the Defendants did not deny the retaliatory raid on Plaintiff's cell and the destruction of his personal property. They, however, claimed that "the staff was not ordered to do so," suggesting that their subordinates destroyed Plaintiff's property on their own accord. See also Plaintiff's Exhibit "K." An affidavit from John David Darland describing the retaliatory actions of Defendant Armendariz, Offender Darland was told: "You can thank your cellie for this."

## IV.

## ARGUMENTS AND AUTHORITIES

**No industrial slavery in the Baha'i Faith.**

In the Book of Aqdas,[4] Baha'u'llah[5] forbids slavery. And Abdu'l-Baha[6] has explained that not only chattel slavery, but also industrial slavery is contrary to the Law of God. When in the

United States in 1912.  Abdu'l-Baha said to the American People:  "Between 1860 and 1865 you did a wonderful thing; you abolished chattel slavery; but today you must do a much more wonderful thing; you must abolish industrial slavery[7]...."

Plaintiff exercised his fundamental right to "freedom of religion" when he refrained from violating the laws and tenets of his religion and refused to participate in industrial slavery.

Plaintiff's refusal to take part in industrial slavery is well within the boundaries of his First Amendment rights, those of Article I, Section 6 of the Texas Constitution, and in accordance with the Texas Religious Freedom and Restoration Act. (TRFRA).

Texas Civil Practice and Remedies Code or TRFRA, Section 110.001(a)(1) states:  "Free exercise of religion means act or refusal to act that is substantially motivated by sincere religious belief." In the past five years Plaintiff has demonstrated his sincere belief in his religion many times; regardless of frequency and the severity of the punishment imposed upon him by the prison officials for his refusal to take part in industrial slavery.

Therefore, Plaintiff's refusal to work without pay is "refusal to act" and "free exercise of religion" according to Section 110.001(a)(1), supra.  Section 110.001 further states:  "Under this chapter it is not necessary to determine that the act or refusal to act is motivated by a central part or central requirement of the person's sinere religious belief."

The United States Supreme Court held that "religious belief need not be acceptable, logical, consistent, or comprehensive to others to merit First Amendment Protection." **Thomas v. Review Board**, 101 S.Ct. 1425, 1430 (1981).   Hence, the Plaintiff's sincere religious belief that

---

[4]   "It is forbidden you to trade in slaves…" Kitab-i-Aqdas.  Page 45, paragraph 72.  See Plaintiff's Exhibit "L."

[5]   Baha'u'llah (Ba-ha-ol-lah). The Glory of God, 1817-1892, is the Prophet-Founder of the Baha'I Faith.

[6]   Abdu'l-Baha or The Master, 1844-1921, the eldest son of Baha'u'llah, the center of His convenant and the interpreter of His writings.

[7]   The quotation is from "Baha-u-llah and the New Era" an introductory book to the Baha'i Faith, 2006 edition, page 159.  See Plaintiff's Exhibit "M."

he cannot participate in industrial slavery and as a citizen of the United States he must abolish industrial slavery merits protection of the First Amendment to the Constitution for the United States of America, as well as Article I, Section 6 of the Texas Constitution."

Moreover, in **McEachin v. McGinnis**, 357 F.3d 197 (2d Cir. 2004), the Court held: "Burden practice need not be mandated by the adherent's religion in order to sustain a prisoner's free exercise claim." That "(a) requirement that a religious practice be mandatory to warrant First Amendment protection finds no support in the cases of the Supreme Court or this Court."

In the Most Holy Book Baha'u'llah forbids slavery, therefore, the observance of this Law is mandatory and it is an unfailing component of the Baha'I Faith; just as the religion of Islam forbids consumption of pork, and Judaism forbids working on the Sabbath Day.

Additionally, in **Thomas v. Review Board**, supra, **Thomas** a Jehovah's Witness had requested a layoff from his manufacturing job and unemployment benefits after being transferred to a factory that supplied military armaments because his work violated his religious principles. The Indiana Supreme Court called the choice a "personal philosophical" one. Citing inconsistencies in the Plaintiff's explanation of his beliefs…. The Supreme Court reversed, explaining that when a Plaintiff draws a line. "It is not for the Court to say it is an unreasonable one."

In **Ford v. McGinnis**, 352 F.3d 582 (2d Cir. 2003), the Court held: "[C]ourts are not permitted to ask whether a particular belief is appropriate or true however unusual or unfamiliar the belief may be."

"[A]n individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things religious." **Fifth Ave. Presbyterian Church v. City of New York**, 293 F.3d 570, 574 (2d Cir. 2002)(quoting **United States v. Seeger**, 380 U.S. 163, 185, 85 S.Ct. 850 (1965).

Therefore, any opposition from the Defendants or the Court in regards to the validity of the Baha'i Law on the issue of slavery, or any doubt whether Plaintiff's understanding of such Law is true or not, or if his religious beliefs are sincere, is a moot point.